# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MAINE

MERYL J. NASS, M.D.,

    Plaintiff

      v.

MAINE BOARD OF LICENSURE IN
MEDICINE, *et al.*,

    Defendants.

CIVIL ACTION NO. 1:23-cv-00321-JDL

## DEFENDANTS' MOTION TO DISMISS

This suit invites the Court to prevent the State of Maine Board of Licensure in Medicine ("BOLIM") and its individual members ("BOLIM members") (collectively "Defendants") from carrying out their statutory duties to protect Mainers' public health and safety. For the reasons set forth below, the Court should decline to do so.

Dr. Nass alleges that Defendants violated her First Amendment rights and retaliated against her for expressing contrary viewpoints regarding COVID-19 when they opened, investigated, and conducted an administrative disciplinary proceeding regarding Dr. Nass's conduct. In response— long after the administrative process regarding Dr. Nass's professional conduct began—Dr. Nass filed this action seeking declaratory and injunctive relief, compensatory damages, attorney fees, costs, and expenses against Defendants, and punitive damages against BOLIM members in their personal capacities.

Because the ongoing BOLIM adjudicatory proceedings implicate important state interests and provide Dr. Nass an adequate opportunity to raise her constitutional claims, this Court should apply *Younger* abstention and dismiss this suit. While *Younger* abstention occasionally results in a stay regarding the portion of claims for money damages, complete dismissal of this action is

1

proper because application of sovereign immunity, quasi-judicial absolute immunity, and qualified immunity bars all claims. Therefore, Defendants move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## STATUTORY BACKGROUND

BOLIM is a Maine state agency affiliated with the Department of Professional and Financial Regulation, 10 M.R.S. § 8001-A(4), established by 5 M.R.S. § 12004-A(24) and Title 32 M.R.S., Chapter 48.[1] BOLIM members are appointed by the governor, serve six-year terms, and may be removed for cause. 32 M.R.S. § 3263. The sole purpose of BOLIM is to "protect the public health and welfare … by ensuring that the public is served by competent and honest practitioners, … and by examining, licensing, regulating and disciplining" physicians and physician assistants. 10 M.R.S. § 8008.

BOLIM has a duty to investigate complaints, including complaints received from the public or those issued on its own motion, for conduct alleged to violate applicable BOLIM statutes or rules. 32 M.R.S. §§ 3269(8), 3282-A(1). Following receipt or issuance of a complaint, BOLIM conducts a confidential investigation.[2] 10 M.R.S. § 8003-B(1), 24 M.R.S. § 2510(1). BOLIM is authorized to issue subpoenas in accordance with the terms of 5 M.R.S. § 9060 at any stage of an investigation, as well as in conjunction with an adjudicatory proceeding. 10 M.R.S. § 8003-A(1). As part of an investigation or as emergency action, BOLIM is authorized to direct that its licensees undergo a mental or physical examination to assist in determining whether a licensee is or may be unable to practice medicine with reasonable skill and safety to patients. 32 M.R.S. § 3286.

---

[1] BOLIM is subject to the Maine Administrative Procedure Act, the Freedom of Access Act, and protected by the provisions of the Maine Tort Claims Act. 5 M.R.S. §§ 8002(2), 10001; 1 M.R.S. §§ 402, 403, 408-A; 14 M.R.S. §§ 8102(4), 8103, 8104-B, 8118.

[2] BOLIM may also investigate physicians pursuant to Maine Health Security Act reports issued under Title 24. 24 M.R.S. §§ 2505, 2506, 2510(1).

Except for limited actions authorized pursuant to 5 M.RS. § 10004, prior to taking licensing action, BOLIM must provide notice and an opportunity for an adjudicatory hearing in accordance with subsection 4 of the Maine Administrative Procedures Act ("Maine APA"). 5 M.R.S. §§ 9052, 10001, 10003. During an adjudicatory hearing, BOLIM admits evidence, decides facts, applies laws, resolves issues on the merits, issues a written decision and order with findings of fact and conclusions of law, and imposes disciplinary sanctions. The Maine APA requires that all hearings be conducted in an impartial manner and provides a process for parties to request individual recusals, subject to judicial review. *Id.* §§ 9063, 11007(4)(C)(4). Following BOLIM adjudication of a matter or any final agency action, a licensee may appeal to the Superior Court and subsequently to the Law Court. *Id.* §§ 11001-11008.

## ALLEGED FACTS AND PROCEDURAL BACKGROUND

In the Fall of 2021, BOLIM announced a "Position Statement" regarding "Covid-19 Misinformation," in conjunction with a statement issued by the Federation of State Medical Boards ("FSMB"). Compl. ¶ 17. The quoted FSMB statement declared that "[p]hysicians who generate and spread COVID-19 vaccine misinformation or disinformation are risking disciplinary action by state medical boards" and that physicians have "an ethical and professional responsibility to practice medicine in the best interests of their patients and must share information that is factual, scientifically grounded and consensus-driven for the betterment of public health." *Id*. The BOLIM Position Statement "support[ed] the position taken by the FSMB regarding Covid-19 vaccine misinformation spread by physicians." *Id.* Further, the BOLIM Position Statement indicated that BOLIM would "appl[y] this standard to all misinformation regarding Covid-19, including non-verbal treatments and preventative measures." *Id*. The BOLIM Position Statement continued, "Assessments and treatments of Covid-19 by physicians … will be evaluated by the BOLIM in

the same manner it evaluates assessments and treatments of any other disease process. Treatments and recommendations regarding Covid-19 that fall below the standard of care as established by medical experts and legitimate medical research are potentially subject to disciplinary action." *Id*.

On October 6, 2021, BOLIM received a complaint from a person alleging that Dr. Nass was "spreading misinformation in a video and on her website." *Id*. ¶ 33. After receiving notice of that complaint, Dr. Nass questioned BOLIM's authority to investigate. *Id*. ¶¶ 34, 35. On October 14, 2021, BOLIM staff responded and outlined BOLIM's jurisdiction to investigate unprofessional conduct.[3] *Id*. ¶ 35. On November 7, 2021, another complaint was filed by a different person with similar allegations. *Id*. ¶ 43.

BOLIM held a meeting on January 11, 2022, and while in executive session discussed the two "misinformation complaints," as well as three "Assessment and Direction matters" regarding Dr. Nass. *Id*. ¶¶ 46-48.[4] After the January 11, 2022, discussion, BOLIM voted to further investigate and 1) issue a complaint regarding the three Assessment and Direction matters; 2) issue an order directing Dr. Nass to undergo a neuropsychological evaluation under 32 M.R.S. § 3286; 3) offer Dr. Nass 24 hours to voluntarily convert her medical license to inactive status in lieu of an order of immediate suspension under 5 M.R.S. § 10004(3) and issue an order of immediate suspension if Dr. Nass declined; 4) subpoena additional patient records; 5) propound a set of questions to Dr. Nass; and 6) obtain two experts to review the complaints. *Id*. ¶ 53 Later that day, BOLIM issued

---

[3] Specifically, the response explained that BOLIM staff, not BOLIM members, "initially review complaints received and make the determination whether there is a potential violation of Board statutes or rules." Compl. Ex 1. It further clarified that the basis for the Board's jurisdiction was that "there [was] alleged unprofessional conduct" where Dr. Nass "communicated in her capacity as a physician in [an] interview and on [a] website" that could allow patients and the public to view the information that she provides "as misleading and/or inaccurate" and referred her to the American Medical Association Code of Medical Ethics for provisions that apply in contexts other than a patient clinical setting.

[4] The three Assessment and Direction matters involved 1) a mandated report from a physician alleging that Dr. Nass had inappropriately diagnosed a patient over the phone; 2) an allegation that Dr. Nass provided misinformation to a pharmacist; and 3) a mandated report from a certified nurse midwife complaining that Dr. Nass had issued a prescription without consulting the certified nurse midwife. Compl. ¶51.

an "Order Directing Evaluation" pursuant to 32 M.R.S. § 3286.[5] *Id.* ¶ 60. On the following day

BOLIM issued an Order of Immediate Suspension, and BOLIM staff sent subpoenas to Dr. Nass.[6]

*Id.* ¶¶ 60, 63. Then on January 13, 2022, BOLIM staff wrote to Dr. Nass requesting certain

information. *Id.* ¶¶ 64-65.

On January 24, 2022, BOLIM issued notice promptly scheduling the adjudicatory

disciplinary hearing regarding the complaints against Dr. Nass. *Id.* ¶ 71. On September 7, 2022,

Dr. Nass moved to dismiss the complaints, "arguing that the BOLIM's attempt to punish her for

speaking violated her free speech rights." *Id.* ¶ 78. BOLIM responded by withdrawing some—but

not all—bases for holding the adjudicatory hearing. *Id.* ¶ 79. On September 26, 2022, BOLIM

issued a Second Amended Notice of Hearing setting an adjudicatory hearing to begin on October

11, 2022. Compl. Ex. 9. On the first hearing date, BOLIM denied Dr. Nass's motion to "vacate its

order of evaluation and interim suspension." Compl. ¶ 80. The BOLIM adjudicatory hearing is

ongoing. *Id.* ¶ 93.

On August 16, 2023, Dr. Nass filed this action, alleging violations of her free speech rights

guaranteed by the United States and Maine Constitutions. *Id.* ¶¶ 118-52.

## LEGAL STANDARDS

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court

accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor.

*Germanowski v. Harris*, 854 F.3d 68, 69 (1st Cir. 2017). But the Court "need not credit a plaintiff's

---

[5] On February 10, 2022, Dr. Nass filed an action in Kennebec County Superior Court challenging the Order Directing Evaluation, which was docketed as AUGSC-CV-22-21. Compl. Ex. 7 at 1 n.1. This matter was dismissed pursuant to a Stipulation of Dismissal filed on July 26, 2023.  *See* Ex. A (docket sheet attached for the Court's convenience).

[6] On February 16, 2022, Dr. Nass filed an action in Kennebec County Superior Court challenging the subpoenas, which was docketed as AUGSC-CV-22-38. Compl. Ex. 7 at 4 n.2. On December 21, 2022, the Kennebec Superior Court dismissed the action. *See* Ex. B (docket sheet and Order on Motion to Dismiss attached for the Court's convenience). Dr. Nass did not appeal.

'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Nor is the Court bound to accept legal conclusions framed as factual allegations. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 10 (1st Cir. 2011); *see also Maldonado v. Fontanes*, 568 F.3d 263, 266, 268 (1st Cir. 2009). Following removal of conclusory allegations, the Court determines whether the remaining factual allegations state a claim for relief that is plausible on its face and allows the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Germanowski*, 854 F.3d at 72 (quoting *Iqbal*, 556 U.S. at 678).

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Court also takes the well-pleaded facts as true and disregards "unsupported conclusions or interpretations of law." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993)). However, if jurisdictional facts are challenged, the Court "must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). A Rule 12(b)(1) challenge based upon sovereign immunity presents a "pure (or nearly pure) question of law. *Id.*

## ARGUMENT

### I. Because Dr. Nass Seeks this Court's Interference with Ongoing State BOLIM Proceedings, the Court Should Abstain and Dismiss Her Claims.

There exists a "longstanding public policy against federal court interference with state court proceedings," *Younger v. Harris*, 401 U.S. 37, 43 (1971), which plainly applies to state administrative disciplinary hearings, *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,

457 U.S. 423, 432 (1982). Here, the Court should apply the principles of *Younger* and dismiss Dr. Nass's Complaint.

   a.   <u>Dr. Nass's BOLIM proceedings contain all the hallmarks of classic *Younger* abstention.</u>

In the context of state administrative proceedings, federal courts apply *Younger* when three conditions are satisfied: "1) the proceedings are judicial (as opposed to legislative) in nature; 2) they implicate important state interests; and 3) they provide an adequate opportunity to raise federal constitutional challenges." *Bettencourt v. Bd. of Reg'n in Med.*, 904 F.2d 772, 777 (1st Cir. 1990). Absent exceptional circumstances, satisfaction of this three-part test results in the requirement that the court abstain from hearing the case. *Coggeshall v. Mass. Bd. of Reg'n of Psychologists*, 604 F.3d 658, 664 (1st Cir. 2010). The BOLIM proceedings at issue in this case satisfy all three *Younger* requirements.

*First*, the ongoing BOLIM proceedings are judicial in nature. A "judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed to already exist." *New Orleans Public Serv. v. Council of New Orleans*, 491 U.S. 350, 370 (quoting *Prentis v. Atl. Coastline Co*., 211 U.S. 210 (1908). BOLIM proceedings are held pursuant to the Maine APA. 5 M.R.S. §§ 9051-9064. Through those proceedings, BOLIM investigates licensee conduct, declares present or past facts based upon evidence presented at a hearing, and enforces its statutes and rules. Moreover, under state law, the BOLIM proceedings constitute an "adjudicatory proceeding," which is defined as "any proceeding before an agency in which the legal rights, duties or privileges of specific persons are required by constitutional law or statute to be determined after an opportunity for a hearing." 5 M.R.S. § 8002(1). Therefore, the

BOLIM proceedings are judicial in nature.[7] *See Gibson v. Berryhill*, 411 U.S. 564, 576-77 (1973) ("[a]dministrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings"); *see also Bettencourt*, 904 F.2d at 778 (review of medical board disciplinary proceeding was judicial in nature); *Coggeshall*, 604 F.3d at 664 (same for psychologist licensing board proceedings). As with the New Jersey Bar disciplinary proceedings at issue in *Middlesex County Ethics Committee*, it is "clear beyond doubt" that Dr. Nass's BOLIM proceedings "are of a character to warrant federal-court deference." 457 U.S. at 433-34.

*Second*, BOLIM proceedings implicate important state interests. BOLIM's sole purpose is to "protect the public health and welfare … by ensuring that the public is served by competent and honest practitioners, and by … examining, licensing, regulating and disciplining" physicians. 10 M.R.S. § 8008. Moreover, "enforcement of proper standards of medical licensure [] obviously implicate important state interests." *Bettencourt*, 904 F.2d at 778; *see also Coggeshall*, 604 F.3d at 664-65 (state has "profound interest in the licensure of health-care professionals" and the "maintenance of appropriate standards of practice"). Because BOLIM proceedings serve the State of Maine's important interest in protecting public health and safety, they satisfy the second *Younger* factor.

*Third*, BOLIM proceedings provide Dr. Nass an adequate opportunity to raise her constitutional challenges, satisfying the final *Younger* requirement. In fact, the Complaint acknowledges that Dr. Nass raised her constitutional challenges during the BOLIM proceedings. Compl. ¶ 78. Additionally, the Maine APA provides Dr. Nass an adequate opportunity to raise her

---

[7] Whether the BOLIM proceedings are judicial in nature is a question of law, not fact. The Complaint makes a conclusory allegation that "Defendants' foregoing acts were not adjudicative … nor was the BOLIM involved in the adjudication of disputes or rights …." Compl. ¶ 134. To the extent that this allegation is meant to imply that the BOLIM proceeding is not judicial in nature, it does not constitute a well-pleaded fact and should be disregarded.

constitutional claims during judicial review of the BOLIM proceedings. 5 M.R.S. §§ 11001, 11007, 11008. An adequate opportunity to raise constitutional claims exists when such "claims may be raised in state-court judicial review of the administrative proceeding." *Ohio Civil Rights Com'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986); *see also Bettencourt*, 904 F.2d at 778. The fact that BOLIM or state courts may reject Dr. Nass's constitutional claims does not deprive her of this opportunity. *Duty Free Shop, Inc. v. Administracion De Terrenos De P.R.*, 889 F.2d 1181, 1183 (1st Cir. 1989).

> b. <u>No exceptions to *Younger* abstention apply</u>.

In "certain exceptional circumstances—where irreparable injury is 'both great and immediate,' where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' or where there is a showing of 'bad faith, harassment, or … other unusual circumstances that would call for equitable relief," abstention may not be required. *Mitchum v. Foster*, 407 U.S. 225, 230 (1972) (quoting *Younger*, 401 U.S. 37) (citations omitted). In such a circumstance, the burden shifts to the plaintiff to demonstrate that "extraordinary circumstances" direct the court not to abstain. *Christian Action Network v. Maine*, 679 F. Supp. 2d 140, 148 (D. Me. 2010) (*citing Colonial Life & Accident Ins. Co. v. Medley*, 572 F.3d 22, 26 (1st Cir. 2009)). The Complaint's allegations describe no such exceptional or extraordinary circumstances.

Dr. Nass challenges 32 M.R.S. § 3282-A, which sets forth BOLIM's complaint process and specifies conduct that could subject a licensee to potential disciplinary action. Compl. ¶¶ 121, 122, 125, 143, 144. She asserts that section 3282-A "as construed by the Position Statement and as applied to her" violates her First Amendment and due process rights. *Id.* But the Position Statement makes no reference to and "construes" nothing about section 3282-A. Compl. ¶ 17. Rather, the Position Statement indicates that "[a]ssessments and treatments of Covid-19 …will be

evaluated by BOLIM in the same manner it evaluates assessments and treatments of any other disease process," "misinformation regarding Covid-19, including non-verbal treatments and preventative measures … erode public trust in the medical profession and may endanger patients," and "[t]reatments and recommendations regarding Covid-19 that fall below the standard of care as established by medical experts and legitimate medical research are potentially subject to disciplinary action." *Id.*

For a federal court to sidestep *Younger*, a challenged statute must be "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Moore v. Sims*, 442 U.S. 415, 424 (1979) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). But Dr. Nass challenges only two grounds for discipline set forth in section 3282-A as violating her First Amendment rights: incompetence and unprofessional conduct.[8] Compl. ¶¶ 74, 76. The Complaint's allegations fall far short of alleging that 32 M.R.S. § 3282-A is flagrantly and patently violative of Dr. Nass's First Amendment rights. No artful pleading could change that reality.

Alleging a First Amendment chilling effect is not enough. "Where a statute does not directly abridge free speech, but—while regulating a subject within the state's power—tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and

---

[8] Specifically, those grounds found in section 3282-A(2) are:

> E) Incompetence in the practice for which the licensee is licensed. A licensee is considered incompetent in the practice if the licensee has: (1) Engaged in conduct that evidences a lack of ability or fitness to discharge the duty owed by the licensee to a client or patient or the general public; or (2) Engaged in conduct that evidences a lack of knowledge or inability to apply principles or skills to carry out the practice for which the licensee is licensed;
>
> F) Unprofessional Conduct. A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior, including engaging in disruptive behavior, that has been established in the practice for which the licensee is licensed. For purposes of this paragraph, "disruptive behavior" means aberrant behavior that interferes with or is likely to interfere with the delivery of care.

32 M.R.S. § 3282-A(2).

the lack of alternative means for doing so." *Younger*, 401 U.S. at 51. The "existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action." *Id.*; *see also Brooks v. N.H. Sup. Ct.*, 80 F.3d 633, 641 (1st Cir. 1996).

Dr. Nass makes no allegation that Defendants have a pecuniary interest in the outcome of the proceedings, but she does allege that BOLIM member Dr. Gleaton has a personal interest in that she has "close ties" to the Federation of State Medical Boards and currently serves as an FSMB director. Compl. ¶¶ 23-24, 100. Bias in the form of prejudgment of facts or sufficient personal interest such as a substantial pecuniary interest sufficient to disqualify BOLIM members may justify a district court decision not to abstain. *Gibson*, 411 U.S. at 579. But the Complaint's allegations do not establish prejudgment of facts or a sufficient personal interest in the outcome to disqualify Dr. Gleaton from the BOLIM proceedings, much less require this Court to ignore the principles of *Younger*.

Moreover, the Maine APA requires that all hearings be conducted in an impartial manner and provides a process for parties to request a BOLIM member recuse themselves due to bias or a direct or indirect personal or financial interest, and such recusal determinations are made a part of the record subject to judicial review. 5 M.R.S. §§ 9063, 11007(4)(C)(4). Maine APA protections coupled with Dr. Nass's failure to allege that each and every BOLIM member, as well as any judge reviewing her case, is incapable of impartially deciding the matter demonstrates that the extraordinary circumstances necessary to disregard *Younger* do not exist in this case. *See Kugler v. Helfant*, 421 U.S. 117, 127-28 (1975). BOLIM members are entitled to a "presumption of judicial impartiality" and integrity, which "cannot be trumped by free-floating invective, unanchored to specific facts." *Brooks*, 80 F.3d at 640; *see also Withrow v. Larkin*, 421 U.S. 35, 47

(1975) (one who alleges bias must "overcome a presumption of honesty and integrity in those serving as adjudicators").

Nor could Dr. Nass establish that the BOLIM proceedings are harassment or a bad faith prosecution. A bad faith prosecution would be an "enforcement proceeding brought without any realistic expectation of finding a violation of a rule." *Brooks*, 80 F.3d at 640-41. Even after the withdrawal of some grounds for discipline contained in the original Notices for Hearing, thirteen grounds for discipline remain, involving patient care and competence to practice medicine, medical recordkeeping, and truth-telling and misrepresentation. Compl. ¶ 82. Given there is a realistic expectation of finding a violation, Dr. Nass cannot establish a bad-faith prosecution.

Because the requirements for *Younger* abstention are met and no extraordinary circumstances exist, the Court should abstain and dismiss this action.[9]

## II. Sovereign Immunity Bars All of Dr. Nass's Claims Against BOLIM and All Monetary Claims Against BOLIM Members in their Official Capacities.

The Eleventh Amendment to the United States Constitution prohibits citizens from suing a state in federal court unless either the state has expressly consented to suit in federal court or Congress has explicitly abrogated the state's immunity in those circumstances where such abrogation is effective. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-58 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100, (1984); *Coggeshall*, 604 F.3d at 662; *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003). Sovereign immunity protects not only a state itself, but also state agencies and any entity that is an "arm of the state." *Irizarry-*

---

[9] Outright dismissal is appropriate because *Younger* requires dismissal of all of Dr. Nass's claims for declaratory and injunctive relief, and the Court need not stay the action regarding Dr. Nass's monetary claims because—as argued below in Part II - IV—sovereign immunity bars recovery of damages from BOLIM and BOLIM members in their official capacities, and quasi-judicial absolute immunity and qualified immunity bar recovery from BOLIM members in their personal capacities. *Bettencourt*, 904 F.2d at 781.

*Mora v. Univ. of P.R.,* 647 F.3d 9, 11 (1st Cir. 2011); *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002) (noting state's sovereign immunity "extends to any entity that is an arm of the state").

Maine scrupulously guards its sovereign immunity rights. *See* 14 M.R.S. § 8118 ("Nothing in this chapter or any other provision of state law shall be construed to waive the rights and protections of the State under the Eleventh Amendment of the United States Constitution, except where such waiver is <u>explicitly stated</u> by law . . . .") (emphasis added). The State has relinquished its sovereign immunity only for a narrow band of claims. *See, e.g.,* 14 M.R.S. §§ 8103, 8104-A, 8104-B. None apply here.

Under both First Circuit and this Court's precedent, BOLIM and its members plainly qualify as an arm of the state for purposes of sovereign immunity, and all official capacity claims should therefore be dismissed. *See, e.g.*, *Coggeshall*, 604 F.3d at 662 (finding Massachusetts medical licensing board an "arm of the state"); *Hill-Spotswood v. Mayhew*, No. 1:14-cv-00206-GZS, 2015 WL 403931, at *6 (D. Me. Jan. 29, 2015) (finding State of Maine Department of Health and Human Services an arm of the state).

Sovereign immunity doubly bars Dr. Nass's claims against Defendants under the Maine Civil Rights Act and the Maine Constitution. *Pennhurst*, 465 U.S. at 106, 121 ("[N]either pendent jurisdiction or any other basis of jurisdiction may override the Eleventh Amendment"). When a plaintiff asks a federal court to compel state officers to comply with state law, the only appropriate response is dismissal. *See Cuesnongle v. Ramos*, 835 F.2d 1486, 1496 (1st Cir. 1987) ("[S]overeign immunity prohibits federal courts from ordering state officials to conform their conduct to state law.").

The Eleventh Amendment therefore requires dismissal of all claims against BOLIM and all monetary claims against BOLIM members in their official capacity.

### III.    Quasi-Judicial Absolute Immunity Bars Dr. Nass's Damages Claims Against BOLIM Members.

When sued in their personal capacities, absolute immunity bars "certain 'quasi-judicial' agency officials who, irrespective of their <u>title</u>, perform <u>functions</u> essentially similar to those of judges or prosecutors, in a setting similar to that of a court." *Bettencourt*, 904 F.2d at 782 (emphasis in original) (citing *Butz v. Economou*, 438 U.S. 478, 511-17 (1977). Such immunity applies without question to each of the BOLIM members in this action because of the "strong need to insure that individual Board members perform their functions for the public good without harassment or intimidation." *Id.* (quoting *Horwitz v. Bd. of Med. Exam. of Colo.*, 822 F.2d 1508, 1515 (10th Cir. 1987)).

Absolute immunity applies if an agency's members: 1) "perform a traditional 'adjudicatory' function, in that they decide facts, apply law, and otherwise resolve disputes on the merits;" 2) decide cases "sufficiently controversial that, in the absence of immunity they would be subject to numerous damages actions" by disappointed parties; and 3) act against a "backdrop of multiple safeguards designed to protect a [physician's] constitutional rights." *Guzman-Rivera v. Lucena-Zabala*, 642 F.3d 92, 96 (1st Cir. 2011) (cleaned up); *see also Bettencourt*, 904 F.2d at 783. Once absolute immunity applies, it applies even if BOLIM members acted in bad faith or "maliciously and corruptly." *Wang v. N.H. Bd. of Reg'n in Med.*, 55 F.3d 698, 702 (1st Cir. 1995) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967). All three immunity requirements are met here.

*First*, BOLIM members perform traditional adjudicatory functions. The Complaint repeatedly describes the BOLIM's conduct associated with the ongoing adjudicatory hearing. Compl. ¶¶ 71-77, 79-83, 90-91, 93, 95, 104-09. And as outlined by Maine statute, BOLIM

members participating in an adjudicatory hearing decide facts, apply laws, resolve disputes on the merits, issue a decision and order with findings of fact and conclusions of law, and if a violation is found after all evidence is presented, impose sanctions. 5 M.R.S. §§ 9057, 9059, 9061. Like members of Massachusetts's medical oversight boards, BOLIM members perform traditional adjudicatory functions. *Bettencourt*, 904 F.2d at 783.

The Complaint seems to attempt to skirt the absolute immunity to which BOLIM members are entitled by alleging that the BOLIM was engaging in an "investigative," rather than "adjudicatory" capacity. Compl. ¶¶ 135-36. But the investigative conduct that the Complaint describes was not separate and distinct from the adjudicatory process. Rather, it arose directly in preparation for the adjudicatory proceedings triggered by the issuance of the Order of Immediate Suspension. Compl. Ex. 3 at 1, 9 (30-day suspension "pending further Board action at an adjudicatory hearing, which will be scheduled shortly"). As laid out above, in January 2022, BOLIM issued an Order of Immediate Suspension, and the adjudicatory hearing involving all three complaints was scheduled less than 30 days later on February 7, 2022. Compl. Ex. 3, at 9; Compl. Ex. 6 at 1; Compl. ¶ 53. At the same time, BOLIM sought additional information relevant to the forthcoming adjudicatory hearing. *Id*. But even if the BOLIM's specific investigatory actions were not quasi-judicial, any attempt to distinguish this case by asserting that the alleged conduct was investigative "is without legal significance" because such actions are also entitled to absolute immunity as prosecutorial conduct. *Wang*, 55 F.3d at 701.

*Second*, like the Massachusetts medical oversight board members in *Bettencourt*, BOLIM members decide controversial matters involving the ability of individuals to practice medicine within the state, which in the absence of immunity, would likely subject them to damages lawsuits

by disappointed parties.[10] 904 F.2d at 783. To ensure and protect public health and safety, BOLIM members must be able to function and perform their statutory responsibilities without harassment or intimidation caused by angry or disappointed licensees such as Dr. Nass suing them personally for damages. This remains true "even where they are accused of deciding the case due to improper motives." *Guzman*, 642 F.3d at 96.

*Third*, sufficient safeguards exist under Maine law, including the judicial review process contained in the Maine APA, to protect against BOLIM or any BOLIM member engaging in unconstitutional conduct. Subchapter 4 of the Maine APA mandates requirements for agency adjudicatory proceedings when statute or constitutional law requires an opportunity for hearing. These mandates include: 1) timely and appropriate notice; 2) an opportunity to be heard, present evidence and argument, and cross-examine witnesses; 3) the right to the issuance of subpoenas for testimony and production of evidence; 4) the requirement that the hearing be conducted in an impartial manner; and 5) the requirement that a complete record be made with a written decision with findings of fact and conclusions of law sufficient to apprise the parties and any interested member of the public of the basis of the decision. 5 M.R.S. §§ 9051-9064. Moreover, any agency decision may be appealed to the Superior Court and then further reviewed by appealing to the Law Court. 5 M.R.S. §§ 11001-11008. There can be no question that the Maine APA "sufficiently ensure[s] the impartiality of the decisionmaking process and provide[s] protection against" BOLIM "wrongful actions" and justifies granting absolute immunity to BOLIM members. *Guzman*, 642 F.3d at 97-98; *see also Bettencourt*, 904 F.2d at 783-84.

---

[10] In recognition of this rationale, the Maine Legislature has provided BOLIM, BOLIM members, and all those who assist BOLIM in performing its duties and functions with broad and absolute civil immunity. 24 M.R.S. § 2511; *Argereow v. Weisberg*, 195 A.3d 1210, 1217-18 (Me. 2018) (Immunity provided by section 2511 for physicians and others enumerated is not forfeited even when the "otherwise protected conduct is accompanied by malice").

Agency officials "responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision." *Butz*, 438 U.S. 516. At all times from the issuance of the Order of Immediate Suspension through the adjudicatory hearing, all BOLIM member functions—initiating complaints, conducting hearings, making investigations, taking evidence, issuing subpoenas, and sitting as an adjudicator—are part of the adjudicative process. *Horwitz*, 822 F.2d at 1515.

For these reasons, all BOLIM members are entitled to absolute immunity on each of Dr. Nass's claims for damages, and those claims should therefore be dismissed.[11]

## IV. Qualified Immunity Protects BOLIM Members from Dr. Nass's Claims.

Even if BOLIM members did not enjoy quasi-judicial absolute immunity (which they do), they would nevertheless be entitled to qualified immunity.

"Public officials have 'qualified immunity' from personal liability for actions taken while performing discretionary functions." *Barton v. Clancy*, 632 F.3d 9, 21 (1st Cir. 2011) (quoting *Lynch v. City of Boston*, 180 F.3d 1, 13 (1st Cir. 1999). "Qualified immunity is designed to confer protection from the travails of suit as well as from the imposition of damages" and should be evaluated "at the earliest practicable stage of litigation." *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014); *see also Maldonado*, 568 F.3d at 268.

A qualified immunity analysis consists of two prongs: 1) whether the facts alleged or established "make out violation of a constitutional right;" and 2) whether the right was "clearly established at the time of the alleged violation." *Barton*, 632 F.3d at 21-22; *MacDonald*, 745 F.3d at 12. To demonstrate that the violation was clearly established, the court examines both the clarity

---

[11] To the extent that the Court were inclined not to dismiss any pendent state law claims against BOLIM members in their personal capacity, Maine law—like federal law—acknowledges that "[p]ublic officials are immune from civil liability for quasi-judicial decisions within the scope of their authority without regard to bad faith, malice or other evil motives." *McNally v. Mokarzel*, 386 A.2d 744, 746 (Me. 1978).

of the law at the time of the alleged violation and whether a reasonable defendant would have understood that his or her conduct was unconstitutional. *Id*. at 22. This "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Maldonado*, 568 F.3d at 269 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *see also Walden v. City of Providence, R.I.*, 596 F.3d 38, 53 (1st Cir. 2010). The Supreme Court has left it to the "sound discretion" of district court judges "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Qualified immunity "sweeps so broadly that 'all but the plainly incompetent or those who knowingly violate the law' are protected from civil rights suits for money damages." *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1373 (1st Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Thus, "government officials" are given "breathing room to make reasonable but mistaken judgments about open legal questions." *MacDonald*, 745 F.3d at 11 (1st Cir. 2014) (quoting *Ashcroft v. Kidd*, 563 U.S. 731, 743 (2011). The protection applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Dr. Nass's Complaint fails both prongs of the qualified immunity analysis.

*First,* the allegations made out in the Complaint do not describe a constitutional violation. "Simply because speech occurs does not exempt those who practice a profession from regulation (including the imposition of disciplinary sanctions)." *Coggeshall*, 604 F.3d at 667. As the Supreme Court has acknowledged, "[s]tates may regulate professional conduct, even though that conduct incidentally involves speech." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361,

2372-73 (2018). This is particularly true for doctors, because "[d]octors help patients make deeply personal decisions, and their candor is crucial." *Id*. at 2374 (quoting *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1328 (11th Cir. 2017)).

It is constitutionally permissible for BOLIM to seek to assure that Dr. Nass is truthful and honest in her communications as a physician and may discipline her for her professional behavior that violates applicable statutes or rules, even if her conduct incidentally involves her speech. *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Pub. Service Com'n of N.Y.*, 447 U.S. 557, 563 (1980) (government may ban commercial speech "more likely to deceive the public than inform it"); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 (1977) (false, deceptive or misleading advertising subject to constitutionally permissible restraint); *Gray v. Dept. of Pub. Safety*, 248 A.3d 212, 222-23 (Me. 2021) (upholding application of professional licensing standard incidentally burdening speech).

*Second*, even if the Complaint set forth a potential violation of Dr. Nass's constitutional rights—which it does not—Dr. Nass can point to no clearly established case law placing Defendants on notice that their conduct violates the Constitution. As set forth above, the relevant case law points in the opposite direction. Moreover, Dr. Nass's quoted statements at issue 1) evidenced that she admittedly failed to follow applicable standards of care such as masking; and 2) contained demonstrably false or misleading information aimed at her patients and the public. Compl. ¶ 73. BOLIM members could not have possibly known that their attempt to regulate Dr. Nass's professional conduct violated her constitutional rights because a reasonable person would conclude that physicians would be subject to regulation for making false or misleading statements. *See Werle v. R.I. Bar Ass'n*, 755 F.2d 195, 199 (1st Cir. 1985).

Accordingly, Qualified Immunity protects BOLIM members from individual liability and

those claims should be dismissed.[12]

### V.   Count 6 Does Not Constitute an Independent Cause of Action and Cannot Be Maintained Against BOLIM Members.

Dr. Nass's final claim (Count 6) is for "Punitive Damages" against "Individual Defendants." But punitive damages constitute a form of relief—which may be sought pursuant to a valid claim—rather than the basis of an independent claim or cause of action. *See Johnson v. Rapid Sheet Metal, LLC*, 560 F. Supp. 3d 623, 630 (D.N.H. 2020) ("Punitive damages are a form of relief and not a 'claim.'"); *see also Elias v. Navasartian*, 2017 WL 1013122 at *4 (E.D. Cal. Feb. 17, 2017) (compiling numerous cases standing for the proposition that punitive damages constitute a prayer for relief and not an independent claim); *cf. Loder v. Me. Information Analysis Ctr.*, 2021 WL 816470 at *9 (D. Me. March 3, 2021) (concluding that a separate count for "injunctive relief" cannot stand alone as a "nebulous separate claim").

BOLIM members would enjoy the same immunities against a "punitive damages" claim as described above in Parts III and IV. But even if those immunities were not applicable to Count 6, Dr. Nass cannot prevent dismissal of this suit by styling a "punitive damages" Count against BOLIM members.  Such a claim should only appear in her prayer for relief.

### CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court dismiss this action with prejudice.

---

[12] To the extent that the Court were inclined not to dismiss any pendent state law claims against BOLIM members in their personal capacity, the Law Court applies qualified immunity in a similar manner to federal courts. *See Clifford v. MaineGeneral Med. Ctr.*, 91 A.3d 567, 583 n.17 (Me. 2014) ("Claims of qualified immunity raised under the MCRA are analyzed similarly to qualified immunity claims raised in federal civil rights actions.").

DATED: October 18, 2023

Respectfully submitted,
AARON M. FREY
Attorney General

 /s/ *Michael Miller*
MICHAEL MILLER, Asst. A.G.
Maine Bar No. 9415
PAUL E. SUITTER, Asst. A.G.
Maine Bar No. 5736
6 State House Station
Augusta, Maine 04333-0006
Tel. (207) 626-8800
Attorneys for Defendant Maine Board of
Licensure in Medicine, Maroulla S. Gleaton,
M.D., Holly Fanjoy, M.D., Noah Nesin,
M.D., Renee Fay-LeBlanc, M.D., Brad E.
Waddell, M.D., Gregory Jamison, RPh,
Noel Genova, P.A., Lynne M. Weinstein,
and Susan Dench

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 18th day of October, 2023, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

GENE R. LIBBY
glibby@lokllc.com

TYLER J. SMITH
tsmith@lokllc.com

MICHAEL E. SAUCIER
msaucier@lokllc.com

/s/ *Michael Miller*
Michael Miller
Assistant Attorney General