UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **Meryl J. Nass, M.D.**, <br><br>  Plaintiff, <br><br> v. <br><br> **Maine Board of Licensure in Medicine**, et al. <br><br>  Defendants. | Civil Action No. 1:23-cv-321-LEW |

**Plaintiff's Opposition to Defendants' Renewed Motion to Dismiss**

Defendants' renewed motion to dismiss invokes res judicata, absolute and qualified immunity, *Heck v. Humphrey*, 512 U.S. 477 (1994), and mootness, but none of those arguments are persuasive. The Maine Superior Court decision does not bar the action here because it involved a different transaction, a different aggregate of operative facts, and a different set of defendants acting in different capacities. And contrary to the defendants' immunity arguments, the Superior Court's decision did not resolve whether the defendants' investigative actions at issue here were retaliatory or unconstitutional. *Heck* is inapplicable because the principle in that case deals with prior criminal judgments, not administrative licensing proceedings. And finally, the defendants' mootness argument is misplaced because harm from the Order Directing Evaluation has not been remedied. Dr. Nass therefore requests that the Court deny the Renewed Motion to Dismiss.

**Background**

In Fall 2021, the Maine Board of Licensure in Medicine ("the Board") announced in a position statement that physicians risk disciplinary action, including suspension or revocation of their medical licenses, if they express viewpoints the Board deems to be COVID-19 vaccine

1

"misinformation." (Compl. ¶ 17.) The Board encouraged physicians to voice support for the vaccine, and threatened them with "disciplinary action" for questioning it. (Compl. ¶¶ 17-22.)

On October 7, 2021, the Board notified Plaintiff, Dr. Meryl J. Nass, M.D., that she was accused of spreading COVID-19 misinformation and demanded her response. (Compl. ¶¶ 33-34.) Dr. Nass is an expert in pandemics and biological warfare and has testified before Congress six times. (Compl. ¶¶ 28-29.) When Dr. Nass questioned the Board's power over her private speech, the Board responded, "you have communicated in your capacity as a physician in the interview and on the website that could allow patient and the public to view the information you provide as misleading and/or inaccurate." (Compl. ¶ 35.) After building complaint files all focused on misinformation, the Board held an executive session in January 2022, which Dr. Nass could "observe" only. (Compl. ¶¶ 36-52.) There, the Board voted unanimously to suspend Dr. Nass's license; to order her to undergo a neuropsychological examination (the "Order Directing Evaluation"); to issue a "25-questions" letter demanding explanation for her statements; subpoena Dr. Nass's patient records, calendar, and patient list; and to take other adverse actions. (Compl. ¶¶ 53-73.)

Dr. Nass filed a lawsuit in this Court on August 16, 2023, against the Board and the individual Board members involved in the January 2022 executive session. (Compl. ¶¶ 1-19.) The Complaint asserted a section 1983 and declaratory judgment claim against the Board that the 2021 position statement violates the First Amendment (Count 1); a section 1983 claim and declaratory judgment claim against the Board that the Position Statement is unduly vague in violation of due process (Count 2); a section 1983 claim against all defendants that their actions constituted First Amendment retaliation (Count 3); a declaratory judgment claim against the Board that the Position

Statement violates the Maine Constitution (Count 4); a Maine Civil Rights Act claim against all defendants for infringing upon Dr. Nass's free speech rights (Count 5); and a punitive damages claim (Count 6). (Compl. ¶¶ 118–158.) Defendants moved to dismiss on October 18, 2023, and the Court heard oral argument on January 17, 2024. (Defs.' Mot. to Dismiss (ECF No. 14); Minute entry for proceedings on 1/17/2024 (ECF No. 21).) The Court issued its order on the motion to dismiss on July 24, 2024, in which it (1) stayed Counts 3, 5, and 6 to the extent based on personal capacity claims against the individual defendants for compensatory or punitive damages; and (2) dismissed all other claims without prejudice.

At the time the federal lawsuit was filed, Dr. Nass was subject to an ongoing administrative hearing before the Board for alleged professional licensing violations, the final day of which took place on September 19, 2023. (BOLIM Decision & Order (ECF No. 20-1) at 1.) The Board issued its final decision and order on December 12, 2023, in which it found certain grounds for disciplinary action and rejected others. (BOLIM Decision & Order at 14-16.) Dr. Nass filed a one-count Petition for Review of Final Agency Action against the Board pursuant to M.R. Civ. P. 80C and 5 M.R.S. § 11001 dated December 28, 2023, in the Maine Superior Court. (Petition for Review of Agency Action (ECF No. 20-3).) The Superior Court issued its final decision on October 30, 2025. (Rule 80C Order and Decision ("Rule 80C Decision") (ECF No. 35-1).) The Rule 80C Decision denied the petition as to the Board's Decision and Order dated December 12, 2023, and vacated the Order Directing Evaluation dated January 11, 2022. (Rule 80C Decision at 28.) Neither party appealed the Rule 80C Decision, and the defendants filed their Renewed Motion to Dismiss.

## Standard of Review

A complaint need only contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief;

3

and a demand for the relief sought." *Parker v. Dall-Leighton*, 2017 U.S. Dist. LEXIS 202220, at *2 (D. Me. Dec. 8, 2017) (quoting Fed. R. Civ. P. 8(a)(1)–(3)). "The Court assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in the plaintiff's favor." *Id.* (citing *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). "A viable complaint need not proffer 'heightened fact pleading of specifics,' but in order to survive a motion to dismiss it must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss based on an affirmative defense may be granted only if the record "leave[s] no doubt" that the plaintiff's action is barred. *Blackstone Realty LLC v. FDIC,* 244 F.3d 193, 197 (1st Cir. 2001).

## Argument

**I.    Claim preclusion does not apply.**

Federal courts apply state law to determine the preclusive effect of a state court judgment. *Torromeo v. Town of Fremont*, 438 F.3d 113, 115 (1st Cir. 2006). In Maine, res judicata subsumes two concepts: issue preclusion and claim preclusion. *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595. "Issue preclusion, also referred to as collateral estoppel, prevents the relitigation of factual issues already decided if 'the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.'" *Id.* (quoting *Van Houten v. Harco Const., Inc.,* 655 A.2d 331, 333 (Me. 1995)). In contrast, "[c]laim preclusion 'bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action.'" *Id* (quoting *Department of Human Serv. v. Comeau*, 663 A.2d 46, 48 (Me. 1995)). As observed by

4

the First Circuit, "[c]laim preclusion is strong medicine and should not casually be dispensed." *Alston v. Town of Brookline*, 997 F.3d 23, 36 (1st Cir. 2021).

The res judicata section of the Renewed Motion to Dismiss raises claim preclusion only. (Renewed Mot. to Dismiss at 10-12 (citing the element of claim preclusion only and arguing that those elements are satisfied).) Claim preclusion applies if "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Cutting v. Down E. Orthopedic Assocs., P.A.*, 2021 ME 1, ¶ 10, 244 A.3d 226. As explained below, the first and third elements are not met.

### A. The identity-of-the-parties element is not met.

In state court, the Rule 80C petition was brought against the Maine Board of Licensure in Medicine only. (Rule 80C Order and Decision (ECF No. 35-1).) In contrast, counts 3, 5, and 6 are individual capacity claims brought against Maroulla S. Gleaton, M.D.; Holly Fanjoy, M.D.; Noah Nesin, M.D.; Renee Fay Le-Blanc, M.D.; Brad E. Waddell, M.D.; Gregory Jamison, RPh; Noel Genova, P.A.; Lynne M. Weinstein; and Susan Dench. (Order on Defs.' Mot. to Dismiss at 1, 26.) Of these defendants, Dr. Nesin, Mr. Genova, and Ms. Dench did not vote in the BOLIM Decision. (BOLIM Decision at 2.) Although the individual-capacity defendants are affiliated with the Board, they are not in privity with the Board for purposes of claim preclusion. *Alston*, 997 F.3d at 37. In *Alston*, a plaintiff sued a town for employment discrimination in state court and, after dismissal of that lawsuit, filed a civil rights action in federal court alleging violations of 42 U.S.C. §§ 1981, 1983, and 1985. *Id.* at 29-31, 36-37 (1st Cir. 2021). The defendants contended that claim preclusion blocked any claims predating the dismissal of the state court lawsuit. *Id.* at 35. The First Circuit

5

held, however, that the individual capacity defendants failed to meet the identity-of-the-parties element:

> But as individual-capacity defendants, these Town officials stand on a different footing. Because "[b]y definition, such a suit takes aim at the individual," those individual-capacity defendants are "not considered to be in privity with the government entity" with which they are affiliated (here, the Town). [*Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013)]. Building on this foundation, we held in *Goldstein* that "a person who is sued in one capacity (whether official or individual) cannot assert a defense of claim preclusion in a later action in which he is sued in a different capacity." *Id*. Thus, "a person who has defended a suit brought against him in his official capacity is not protected by principles of claim preclusion from a subsequent suit brought against him by the same plaintiff[] in his individual capacity." *Id*. It follows that none of Alston's claims against persons sued in their individual capacities are subject to claim preclusion, and the district court's contrary ruling was incorrect.

*Id. See also Goldstein v. Galvin*, 719 F.3d 16, 23 (1st Cir. 2013) ("a person sued in his official capacity is a different party, in contemplation of law, than the same person sued in his individual capacity. It follows inexorably that a person sued only in his official capacity is neither identical to, nor in privity with, the same person sued in his individual capacity"); *Huard v. Pion*, 98 A.2d 261, 262 (Me. 1953) (explaining that claim preclusion considers' the party's capacity and whether they have the same rights); Restatement (Second) of Judgments § 36(2) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity").

### B.     The "were or might have been litigated" element is not met.

"To determine whether the matters presented for decision in the instant action were or might have been litigated in the prior action, we examine 'whether the same 'cause of action' was before the court in the prior case.'" *Johnson v. Samson Constr. Corp.*, 1997 ME 220, ¶ 6, 704 A.2d 866 (quoting *Connecticut Nat'l Bank v. Kendall,* 617 A.2d 544, 547 (Me. 1992)). The Law Court

6

"appl[ies] a transactional test to define a cause of action, pursuant to which the measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Id.* (quoting *Connecticut Nat'l Bank,* 617 A.2d at 547). A prior judgment can bar a second suit relying on a legal theory not advanced in the first case, seeking different relief, or different evidence, but only if the second suit "aris[es] out [of] the same aggregate of operative facts." *Id.* (internal quotation omitted).

The two cases here arise out of a different aggregate of operative facts and represent distinct transactions for claim preclusion purposes. Dr. Nass's federal claims focus on whether defendants' pre-hearing, investigative conduct occurring primarily in January 2022 was in retaliation for Dr. Nass's free expression. (Compl. ¶¶ 46-70, 135.) The Superior Court decision, in contrast, focused on whether the Board's final decision and order—issued almost two years after the events described in the complaint here—was sustainable. (Rule 80C Decision at 9 (describing the scope of review); BOLIM Decision (issued December 12, 2023).) To be sure, the Superior Court also concluded that the Order Directing Evaluation was arbitrary and capricious, because "it lacked a specific basis on which to suspect Dr. Nass was suffering from a condition that interfered with her ability to practice medicine[.]" (Rule 80C Decision at 25.) But the Superior Court did not address due process arguments associated with the Order Directing Evaluation, considering its other conclusions. (Rule 80C Decision at 23, n.13.) Thus, the aims of the two actions focus on temporally disconnected events: the Board's investigative activities as alleged in the federal lawsuit, and the Board's final decision and order in the petition for review. And the actions seek redress for different wrongs: whereas the state case sought review of an agency's action that Dr. Nass

7

contended was unsupportable, this action seeks damages against individuals who abused their authority under color of law to chill and punish free speech.

What is more, principles of comity would have prevented Dr. Nass from asserting the claims presented here in the state court action. Maine recognizes the principle that "[t]he pendency in competing courts of two separate actions involving the same subject matter, parties and issues does not pose a question of jurisdiction but one of comity. The general rule is that in cases of concurrent jurisdiction the court given priority is that which first exercises jurisdiction." *Jones v. York*, 444 A.2d 382, 384 (Me. 1982). Here, the federal court acquired jurisdiction over the controversy first. By the time state court case even accrued by way of a final decision, the parties here had fully briefed the motion to dismiss and the court had already scheduled oral argument. (*See, e.g.*, Defs.' Reply In Support of Motion to Dismiss (ECF No. 17) (filed November 21, 2023); Notice of Hearing (ECF No. 19) (dated December 7, 2023 and setting oral argument for January 17, 2024).) With a pending motion and 47-pages of briefing in federal court, there is little reason to think the Maine Superior Court would have interfered with an ongoing federal lawsuit even if Dr. Nass re-pled her claims in state court—far more likely, the Maine Superior Court would have declined to exercise jurisdiction over those claims. Thus, the matter presented here is not one that might have been litigated in the state court proceedings. *Norton*, 2005 ME 109, ¶ 20 (finding claim preclusion inapplicable where the Law Court believed that a federal court would have likely declined to exercise supplemental jurisdiction in the first action).

Relatedly, an exception to the general prohibition on claim splitting applies when the basis for the second claim arises after the first action is filed. "[C]ourts have long abided by the unremarkable principle that claims arising subsequent to a prior action . . . are not barred by res

judicata regardless of whether they are premised on facts representing a continuance of the same course of conduct." *20 Thames St. LLC v. Ocean State Job Lot of Me.*, 2017 LLC, 2021 ME 33, ¶ 32, 252 A.3d 516 (Connors, J., concurring) (quoting *Darney v. Dragon Prods. Co.*, 592 F. Supp. 2d 180, 184 (D. Me. 2009).). "Application of this unremarkable principle is complicated by the at-times-difficult determination of what degree of conduct is necessary to give rise to a new 'claim,' particularly where ongoing conduct is involved.'" *Id.* ¶ 33 (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383-84 (2d Cir. 2003)). "But '[w]here the facts that have accumulated after the first action are enough on their own to sustain the second action,' the second claim is not barred." *Id.* ¶ 33 (quoting *Storey*, 347 F.3d at 383-84).

Applied here, Dr. Nass was permitted to proceed with two distinct claims for two distinct cases, without concerns of claim-splitting: (1) the claims in the federal complaint seeking relief for the Board's investigative conduct taken in retaliatory conduct in January 2022; and (2) a challenge to the Board's decision and order which did not vest until December 12, 2023.

II.   **The Superior Court decision is irrelevant to Defendants' absolute immunity argument.**

Defendants incorrectly assert (Renewed Mot. to Dismiss at 12-14) that the Maine Superior Court's decision entitles them to absolute immunity. In its decision on the motion to dismiss, the Court wrote,

> Absolute judicial immunity will extend to officials engaged in administrative agency enforcement proceedings if those proceedings share "enough of the characteristics of the judicial process." [*Butz v. Economou*, 438 U.S. 478, 512, 513 (1978)]. Based on a preliminary review of the allegations and the sparse record provided by the Individual Defendants, who bear the burden of satisfying the *Butz* requirements, this may be a case in which it is appropriate to deny absolute immunity, but only if the Board's administration of the enforcement proceedings did not afford meaningful political safeguards and/or adversarial procedures. These considerations can await the resolution of the state proceedings.

(Order on Defs.' M. to Dismiss at 29.) According to the defendants, the Superior Court's decision "fills the gaps" in the record because the Superior Court decision confirms they were free from unconstitutional bias. (Renewed Mot. to Dismiss at 13.)

This analysis is incorrect because the availability of absolute immunity turns on the process, not the subjective mindset of the person claiming immunity. *See generally Butz v. Economou*, 438 U.S. 478, 513 (1978). That is the very point of absolute immunity, and why it applies so narrowly outside of a judicial context. As the First Circuit has explained, a court must consider whether (1) the proponent performs a traditional adjudicatory function, (2) the matters for decision are such that, in the absence of absolute immunity, the proponent would be subject to numerous damages actions, and (3) the proponent adjudicates disputes against a backdrop of multiple safeguards designed to protect a claimant's constitutional rights. *Guzman-Rivera v. Lucena-Zabala*, 642 F.3d 92, 96 (1st Cir. 2011). The Superior Court decision adds nothing to this inquiry. As discussed above, the Superior Court's decision predominantly addresses the Board's final decision and order issued on December 12, 2023—an act unrelated to anything alleged in this lawsuit. Although Dr. Nass challenged the Order Directing Evaluation too, the Superior Court ultimately did not decide if the procedures precipitating that order complied with due process because it invalidated the order on other grounds. (Rule 80C Decision at 23, n.3.) If anything, the Superior Court's conclusion that the order was arbitrary and capricious would tend to suggest a lack of due process protections. Accordingly, and for the reasons previously argued, *see* Opp'n to Mot. to Dismiss at 11-15, absolute immunity is improper.

### III. Dr. Nass is not collaterally estopped from asserting the individual defendants retaliated against her for exercising her free speech rights.

The renewed absolute immunity and qualified immunity arguments turn on the argument that the Rule 80C Decision found the Board was not biased against Dr. Nass. (Ren'd Mot. at 12-16; Rule 80C Order at 19.) Although not described as such, this is effectively an issue preclusion argument. For issue preclusion purposes, "[a]n issue was 'actually litigated' when it was raised, contested by the parties, and submitted to the court for determination. *20 Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 2021 ME 33, ¶ 39 (Connors, J., concurring) (citing 18 James W. Moore et al., *Moore's Federal Practice* § 132.03 (3d ed. 2021)). And "[i]n addition to meeting the actual litigation requirement, an issue must have been actually decided for it to be given preclusive effect." *Id.*

Consistent with the discussion in Part I, the issue of whether the Board members' actions in January 2022 were in retaliation for Dr. Nass's speech was not litigated and decided. Consistent with the task before it, the Superior Court comments about bias were directed at whether the Board was biased in arriving at the final BOLIM Decision, not whether its pre-hearing investigative conduct was retaliatory. (Rule 80C Decision at 16-18.) Indeed, the Rule 80C Decision applies Maine decisions favoring *adjudicators* with a presumption of regularity. (Rule 80C Decision at 16-18; *see also Friends of Maine's Mts. v. Bd. of Envtl. Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689 ("[i]n order to show bias, however, Friends must present evidence sufficient to overcome a presumption that the fact-finders, as state administrators, acted in good faith").) It also reads, "[u]ltimately, the record reveals a Board that was conscious of its duty to fairly *adjudicate* this matter and cautious not to let biases creep into its decision-making process." (Rule 80C Decision at 19 (emphasis added).) The only matter "adjudicated" by the Board was the Third Notice of Hearing, heard

11

between October 11, 2022 and September 19, 2023. (BOLIM Decision at 1; *see also* Rule 80C Decision at 11, n.9.) Likewise, the Superior Court observed that the record it considered was the 11,000-page record developed throughout the entire, multi-year proceeding. (Rule 80C Decision at 18.)

The Renewed Motion to Dismiss appears to implicitly recognize this distinction: "the Superior Court's 80C Decision that the BOLIM members carefully considered their vote to proceed to a hearing on Dr. Nass's license and *ultimately* disentangled her speech and opinions from Dr. Nass's behavior and actions before holding its hearing on the later." (Ren'd Mot. at 14 (emphasis).) The most that can be said of the Superior Court's comments is that, regardless of the Board members' motivations or opinions in January 2022, the Board was able to put those incidents aside and ultimately provide Dr. Nass a fair hearing. (Rule 80C Decision at 18 ("The court finds, *regardless of whether the Board members harbored personal opinions as to the substance of Dr. Nass's speech*, they did not allow those opinions to create an actual risk of bias or prejudgment in the form of a conflict of interest or some other form of partiality" (internal quotation omitted) (emphasis added)).)

Corroborating this point, the attachments to the complaint indisputably establish that the Board <u>did</u> target Dr. Nass for her speech until at least September 14, 2022. The Amended Hearing Notice issued March 22, 2022[1] alleged 18 instances of Dr. Nass's speech. (Compl. ¶¶ 74-75, Ex. 7 (ECF No. 1-7).) On that basis, the Board alleged Dr. Nass was subject to discipline for incompetence, "disruptive behavior," and violating American Medical Association Code of Medical Ethics rules regarding the use of social media:

---

[1] The Amended Notice of Hearing superseded a Notice of Hearing dated January 24, 2022, which also alleged Dr. Nass's speech. (Compl., Ex. 7 (ECF No. 1-6).)

12

>I. Pursuant to 32 M.R.S. § 3282-A(2)(E)(1) for incompetence by engaging in conduct that evidences a lack of ability or fitness to discharge the duty owed by the licensee to a patient.
>
>II. Pursuant to 32 M.R.S. § 3282-A(2)(E)(2) for incompetence by engaging in conduct that evidences a lack of knowledge or inability to apply principles and skills to carry out the practice for which the licensee is licensed.
>
>. . .
>
>XVI. Pursuant to 32 M.R.S. § 3282-A(2)(F) for engaging in unprofessional conduct by violating a standard of professional behavior that has been established in the practice of medicine by engaging in disruptive behavior. "Disruptive behavior" means aberrant behavior that interferes with or is likely to interfere with the delivery of care.
>
>XVII. Pursuant to 32 M.R.S. § 3282-A(2)(F) for engaging in unprofessional conduct by violating a standard of professional behavior that has been established in the practice of medicine as set forth in AMACME Opinion 2.3.2 Professionalism in the Use of Social Media.

It was only after Dr. Nass filed a motion to dismiss on September 7, 2022—pointing out to the Board that it cannot punish her for speaking—that the Board withdrew its misinformation theories and amended Grounds I and II to be based on Patients 1, 2, and 3 on September 14, 2022. (Compl. ¶ 78–79; *id* Ex. 8 (ECF No. 1-8) (Notice of Withdrawal); *id.* Ex. 9 (ECF No. 1-9) (Second Amended Notice of Hearing).) Likewise, the Order of Immediate Suspension dated January 12, 2022 alleged various instances of Dr. Nass's speech and that she had violated the AMA Code of Medical Ethics Opinion 2.3.2 (Professionalism in the Use of Social Media) prohibition on making statements that might "undermine public trust in the medical profession." (Compl. Ex. 3 (ECF No. 1-3) at 5-7.) The Order Directing Evaluation dated January 11, 2022 similarly alleged Dr. Nass's statements before concluding that it would be in interests of public heath and safety to compel Dr. Nass to submit to a neuropsychological examination. (Compl. Ex. 2 (ECF No. 1-2) at 1-2, 4.) So even though the Superior Court believed that the Board was able to disregard its earlier efforts to punish

13

"misinformation" during the eventual adjudicatory hearing, that conclusion pertains only to the adjudicatory hearing itself and does not retroactively legitimize the Board's earlier retaliatory conduct. At the time of the conduct alleged here, the Board was openly attempting to punish Dr. Nass for speaking.

Finally, "[f]or issue preclusion to apply, the Restatement requires, inter alia, that the determination upon which the preclusion claim is based be essential to the judgment of the previous court." *Pacheco v. Libby O'Brien Kingsley & Champion, LLC*, 2022 ME 63, ¶ 8, 288 A.3d 398 (citing Restatement (Second) of Judgments § 27). Thus, "[t]here may be circumstances where the previous court made determinations relevant to the second action, but if 'the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action . . . is not precluded' because such determinations have the characteristics of dicta." *Id.* ¶ 9 (quoting Restatement (Second) of Judgments § 27 cmt. h.). For example, in *Pacheco*, an attorney in an earlier divorce proceeding subpoenaed the opposing party (Pacheco)'s medical records and did not copy the opposing attorney. *Id.* ¶ 3. In response to a later motion for mistrial, the referee in the divorce "found, inter alia, that the Firm's failure to copy Pacheco's attorney was inadvertent." *Id.* ¶ 4. Later, Pacheco sued alleging abuse of process and intentional infliction of emotional distress, "the gist of which is that the Firm abused the legal process by obtaining a full set of her counseling records[.]" *Id.* Even though the previous determination expressly found the failure "inadvertent," the Law Court held that finding was not preclusive because they were not "essential" to the underlying divorce judgment. *Id.* ¶¶ 10-11; *cf. Mills v. Mills*, 565 A.2d 323, 324 (Me. 1989) ("The critical issue before the Superior Court in 1989 was precisely the same issue that the court fully and

14

finally adjudicated in 1988: Is Esther, by contract or otherwise, entitled to alimony from Crosby at any time following her marriage in 1973 to another man").

The "critical issue" the Superior Court was deciding was whether the Board's December 12, 2023 decision and order was affected by bias, not whether the Board's investigative actions nearly two years earlier were motivated by Dr. Nass's speech. And relevant to the requirement that a determination be "essential," the Superior Court's discussion was through the lens of the applicable standard of review, which includes a presumption of good faith and a "reluctan[ce] to find unconstitutional bias absent a strong showing" otherwise. (Rule 80C Decision at 16-17.) The discussion also reviewed the entire record developed after years of litigation, culminating in an over-11,000-page administrative record. (Rule 80C Decision at 18.)

Accordingly, the defendants have not established that the record leaves "no doubt" that Dr. Nass's claims are precluded by the Superior Court's comments about the executive session. *Blackstone Realty LLC,* 244 F.3d at 197. For the reasons above as well as those briefed and argued earlier, defendants' qualified and absolute immunity arguments fail.

**IV.**     ***Heck v. Humphrey* does not apply here.**

Defendants next argue that Dr. Nass's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), "which held that a § 1983 claim cannot impugn a valid criminal judgment[.]" *Aprileo v. Clapprood*, 158 F.4th 317, 319 (1st Cir. 2025). As explained by the First Circuit, the Supreme Court's decision in *Heck* included the "principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments[,]" and that "principles of finality and consistency weigh against expanding 'opportunities for collateral attack' on state convictions outside of the habeas corpus process." *Id.* (citing *Heck*, 512 U.S. at 485, 486). See also *id.* at 325

15

("As the Supreme Court has explained, the purpose of the *Heck* bar is, in substantial part, to avoid 'conflicting resolutions' of state criminal cases and federal civil rights proceedings). Applying these principles, the First Circuit declined to apply *Heck* in the absence of any criminal conviction. *Id.*

Nevertheless, defendants propose that "federal courts have consistently recognized the parallels between state criminal prosecutions and administrative prosecutions for professional licensure violations." (Ren'd Mot. at 17 (citing *Bettencourt v. Bd. of Reg'n in Medicine of Mass.*, 904 F.2d 772, 782 (1st Cir. 1990).) But *Bettencourt* had nothing to do with the *Heck* bar. Instead, *Bettencourt* was addressing *Younger* abstention and quasi-judicial immunity. Defendants make no argument explaining why the principles in *Bettencourt* would carry over to *Heck* and have therefore waived that argument by leaving it to the Court to construct the theory on their behalf. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Defendants also observe that "[a]t least one federal court" has "characterized" a Third Circuit decision as extending *Heck*'s favorable termination rule to licensing board disciplinary proceedings. (Ren'd Mot. at 17 (citing *Glunk v. Penn. State Bd. of Medicine*, Civ. No. 1:14-CV-659, 2016 U.S. Dist. LEXIS 124173 (M.D. Pa., Sept. 12, 2016)).) But neither court said any such thing. Following a remarkable number of unsuccessful lawsuits in the wake of a malpractice verdict and licensing proceeding, Glunk filed a 65-page, 435 paragraph seconded amended complaint against a licensing board. *Id.* at **1-12. *Glunk* observed that malicious prosecution claims are subject to a favorable termination rule and then observed "[t]he United States Court of Appeals for the Third Circuit has extended this favorable termination rule to civil rights claims arising out of state

16

licensing board disciplinary hearings." *Id.* \*24 (citing Wyatt v. Keating, 130 F. App'x 511, 516 (3d Cir. 2005)). But *Glunk* was not talking about *Heck*; it was talking about the substantive elements for a malicious prosecution claim. It cited *Heck* as "see also" authority at one point, but that was just for the general judicial policy against conflicting case resolutions, not for an extension of *Heck* itself. *Id.* at \*24. The word "Heck" does not even appear in referenced Third Circuit case, *Wyatt*. And even if it did, the entire scheme seems undermined (if not outright overruled) by the Supreme Court's more recent decision in *Thompson v. Clark*, 596 U.S. 36 (2022).

Finally, even if *Heck* were applicable to state licensing proceedings, for reasons described above, the actions at issue in this action are different than those adjudicated in the Superior Court action. Therefore, even if *Heck* could be read to apply to licensing proceedings, it would not bar the action here.

## V. The aspects of Dr. Nass's claims based on the Order Directing Evaluation present a live controversy.

The Renewed Motion to Dismiss asserts that Dr. Nass's claims are moot to the extent based on the Order Directing Evaluation entered in January 2022, because that order was vacated by the Superior Court's decision in late 2025. (Ren'd Mot. at 18-19.) Dr. Nass's remaining claims here are not for vacatur for the Order Directing Evaluation, but damages against the individual Board members together with any other relief legally available. (Compl., Prayer for Relief ¶ E-G.) Compensatory damages are available in section 1983 claims, and those damages are informed by common law tort principles. *Carey v. Piphus*, 435 U.S. 247, 256 (1978); *see also McBreairty v. Brewer Sch. Dep't*, 2025 U.S. Dist. LEXIS 265463, at \*11 (D. Me. Dec. 22, 2025). Nominal damages are also available. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 n.11 (1986).

17

As alleged in the complaint, "[b]y ordering that Dr. Nass submit to an examination under 32 M.R.S. § 3286, and by providing this Order to the media, along with interviews with BOLIM Executive Director Dennis Smith, upon information and belief BOLIM falsely suggested to the public and Dr. Nass' patients that Dr. Nass was suffering from some type of mental health or other disorder and tarnished her reputation." (Compl. ¶ 57; ¶ 59 (noting that Dr. Nass's suspension and order of evaluation were reported on repeatedly by local and national news outlets).) Indeed, the statute can only be invoked where a physician "is or may be unable to practice medicine with reasonable skill and safety to patients by reason of mental illness, alcohol intemperance, excessive use of drugs, narcotics or as a result of a mental or physical condition interfering with the competent practice of medicine." 32 M.R.S. § 3286. The Board also contemporaneously suspended Dr. Nass's license to practice medicine, contributing to the totality of circumstances of her damages and her ability to work. (Compl. ¶ 60, Ex. 3 (ECF No. 1-3) (Order of Immediate Suspension).) Adding to this, federal law required the Board to report the Order Directing Evaluation to the National Practitioner Databank, which the Board in fact did. 45 C.F.R. § 60.3; *see also* 42 U.S.C. § 1396r-2. (Exhibit 1 (portion of NPDB report showing the report made of the Order Directing Evaluation).)[2] In doing so, the Board flagged the basis of its action against Dr. Nass as "immediate threat to public," and wrote

> On January 11, 2022, the Maine Board of Licensure in Medicine ("The Board") issued an Order directing Meryl J. Nass, M.D. to submit to a neuropsychological evaluation by a Board-selected psychologist on February 1, 2022, pursuant to 32

---

[2] Mootness is generally addressed under Rule 12(b)(1), so this Court may consider matters outside the pleadings. *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (noting that the Court may consider matters outside the pleadings on a Rule 12(b)(1) motion); *Nikunj Patel v. Jaddou*, 695 F. Supp. 3d 158, 165 (D. Mass. 2023) (explaining that mootness is a matter of subject matter jurisdiction properly addressed under Rule 12(b)(1)). Regardless, even under Rule 12(b)(6), "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Thus, the Board's NPDB report is appropriately before the Court.

      M.R.S. 3286 based on preliminary findings that Dr. Nass is, or may be, unable to practice medicine with reasonable skill and safety to her patients.

(Ex. 1 at 2.)

      Ultimately, the harm arising from the Order Directing Evaluation stems from its issuance and publicity, not whether it was ultimately enforced. That harm persisted irrespective of the order's later vacatur—a result that the defendants imply was a matter of mere insufficient drafting. (Ren'd Mot. at 15.) By the time the order was vacated years later, much of the damage had already been done: the Board had effectively announced to the public that Dr. Nass could not safely practice medicine because she had suffered from or was suffering from some type of mental health or other disorder. (Compl. ¶¶ 57-59.) She then remained suspended for 23 months pending a final order, subject to a black mark making it virtually impossible for her to work again. In other words, the Board did just what its 2021 position statement threatened: it used its authority to damage a physician's livelihood, reputation, and ability to practice if they spoke critically of the COVID-19 vaccine.

## Conclusion

      For the foregoing reasons, along with those asserted in the Opposition to the Motion to Dismiss (ECF No. 16), Dr. Nass requests that the Court deny the renewed Motion to Dismiss.

| | |
|---|---|
| Date: February 27, 2026 | /s/ Tyler J. Smith<br>Gene R. Libby, Esq. (Bar No. 427)<br>Tyler J. Smith, Esq. (Bar No. 4526)<br>Michael E. Saucier, Esq. (Bar No. 353) |

LIBBY O'BRIEN KINGSLEY & CHAMPION, LLC
62 Portland Road, Suite 17
Kennebunk, ME 04043
(207) 985-1815
glibby@lokllc.com
tsmith@lokllc.com
msaucier@lokllc.com

## CERTIFICATE OF SERVICE

I hereby certify that, on the date set forth below, I electronically filed the above document with the Clerk of Court using the CM/ECF system which caused a copy of this document to be served electronically on all registered parties and counsel of record.

| | |
|---|---|
| Dated:  February 27, 2026 | /s/ Tyler J. Smith<br>Tyler J. Smith, Esq. (Bar No. 4526)<br>Libby O'Brien Kingsley & Champion, LLC<br>62 Portland Road, Suite 17<br>Kennebunk, ME  04043<br>(207) 985-1815<br>tsmith@lokllc.com |